IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**ANTHONY S. KIDD,**

                **Petitioner,**

v.

**STATE OF KANSAS,**

                **Respondent.**

Case No. 15-CV-3235-DDC

**MEMORANDUM AND ORDER**

This matter comes before the court on petitioner Anthony S. Kidd's petition for writ of habeas corpus (Doc. 1), the State's Answer and Return (Doc. 19), and petitioner's Traverse (Doc. 23). Petitioner attacks his state court conviction and raises the following five claims for relief: (1) due process violation based on the prosecution introducing perjured testimony; (2) Sixth Amendment violations based on trial counsel's failure to impeach four witnesses; (3) trial counsel's failure to pursue a self-defense theory; and (4) trial counsel's failure to obtain and present expert testimony. Doc. 1. Petitioner also asserts that in his direct appeal, counsel failed to argue that he was convicted by a racially biased jury. Doc. 1. However, the court dismissed this claim without prejudice on April 5, 2016, because petitioner failed to exhaust his claim in state court. Doc. 10. So, only four of petitioner's grounds for habeas relief are before the court. For the reasons discussed below, the court denies the Petition.

    **I.**    **Federal Habeas Standards**

A federal court reviews a state prisoner's challenge to matters decided in state court proceedings according to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which "requires federal courts to give significant deference to state court decisions" on the merits.

1

*Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013).  Under 28 U.S.C. § 2254, a federal court should not grant state prisoner habeas relief for "any claim that was adjudicated on the merits in State court proceedings" unless the prisoner can show one of the following:  (1) that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) that the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  "Clearly established Federal law" refers to the Supreme Court's holdings, not dicta.  *Lockett*, 711 F.3d at 1231.  The adjudication is "'contrary to' a clearly established law if it 'applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'"  *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A factual determination "made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  *Id.*

The court applies a different standard, however, to ineffective assistance of counsel claims.  "[I]n a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)."  *Strickland v. Washington*, 466 U.S. 668, 698 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components."  *Id.* at 687.  First, "the [petitioner] must show that counsel's performance was deficient."  *Id.*  This requires showing that counsel did not provide "reasonably effective assistance."  *Id.*  "Second, the defendant must show that the deficient

performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

## II.     Factual Background

The Kansas Supreme Court summarized the facts of petitioner's state-court conviction as follows:

> On May 7, 2007, Ladria Gulley returned home from work at approximately 5:30 p.m. to find her husband, Tynus Gulley, Sr., working outside the house. Later that evening, Ladria's cousin, Les Labroi, stopped by the Gulleys' home and found Tynus mixing cement outside and [petitioner Anthony Kidd] "just standing there, drinking."
>
> When Labroi asked why the two men were working in the dark, Kidd pulled out a "little short shotgun" and said "ain't nobody coming back here. I'm a gator, you know . . . my eyes come up out of the water." Labroi characterized Kidd's comments as "just crazy talk, really." At trial, when the prosecutor questioned Labroi regarding Kidd's level of intoxication, Labroi testified Kidd "was probably buzzed a little bit, but he wasn't—he wasn't real drunk." Labroi testified he could tell that Kidd was drinking by the things he was saying, including several references to himself "as a vicious animal or something like that."
>
> After Labroi left, Tynus and Kidd came inside and played video games. Ladria testified Kidd drank brandy and made "snide little remarks." At some point Kidd made a comment about Tynus' brother, and Tynus asked Kidd to leave. Ladria intervened, and a physical altercation ensued between Kidd, Tynus, and Ladria.
>
> Ladria testified at trial that she assumed Kidd may have been drunk because he drank from a bottle of alcohol and talked a lot. However, Ladria agreed that Kidd's intoxication did not prevent him from communicating, fighting, and running out of the house.
>
> Eventually, Kidd left the house, and a few minutes later, Ladria heard a gunshot and the sound of glass shattering in the kitchen. Ladria and Tynus ran out of the house and onto the porch, where Kidd stood in front of the house. Ladria saw a flash and heard a gunshot before closing her eyes. When she opened her eyes, she saw Tynus fall and realized he had been shot. Kidd took off running. Ladria ran to the neighbor's house and asked the neighbor to call 911. Tynus later died from the gunshot wounds.
>
> Several hours later, at approximately 1 a.m., May 8, 2007, Keith Johnson was walking on a residential street in a neighborhood near the Gulleys' home and stopped in front of an old garage to roll a cigarette. As he did so, he heard a loud

3

blast. Johnson realized he had been shot when he felt a burning sensation in his left hand. He looked up and saw Kidd walking toward him with a shotgun. Johnson apologized to Kidd, attempting to plead for his life. Kidd told Johnson to shut up and then began to run down the street. Johnson ran in the opposite direction and called 911 from a pay phone. Ultimately, Johnson's injuries necessitated amputation of four fingers on his left hand.

The State charged Kidd with one count of first-degree premeditated murder of Tynus Gulley, one count of aggravated assault of Ladria Gulley, one count of criminal discharge of a firearm at an occupied dwelling, and one count of aggravated battery of Keith Johnson.

In addition to the testimony discussed above, the evidence at trial established that sometime late on May 7, 2007, or very early on May 8, 2007, Kidd checked into Room 2 of the Bellboy Motel. Several months later, the same employee who checked Kidd into Room 2 was cleaning that room when he moved the dresser and found a shotgun.

At trial, Labroi identified the gun found in the motel as the gun Kidd pulled out at the Gulleys' home on May 7, 2007. A firearm/tool mark examiner compared the breech face markings on the shotgun shells found at both crime scenes with a shell fired from Kidd's shotgun and concluded the shotgun shells found at both crime scenes were fired from Kidd's shotgun.

The jury found Kidd guilty on all four counts. The district court sentenced Kidd to a life sentence with a minimum of 25 years for the murder conviction and a consecutive term of 52 months for the three remaining counts.

*State v. Kidd*, 265 P.3d 1165, 1167–68 (Kan. 2011).

Petitioner appealed his conviction to the Kansas Supreme Court through counsel and pro se. Petitioner raised the following claims through counsel: (1) the district court erred by refusing to instruct the jury on involuntary intoxication; (2) the prosecutor committed misconduct by eliciting testimony of petitioner's criminal history in violation of the court's limine order; (3) cumulative errors denied petitioner a fair trial; and, (4) the district court unconstitutionally sentenced petitioner in violation of *Aprendi v. New Jersey*, 530 U.S. 466 (2000). Br. of Appellant, *State v. Kidd*, 265 P.3d 1165 (Kan. 2011) (No. 101809) [hereinafter Br. of Appellant]. Petitioner raised the following claims pro se: (1) the prosecutor committed misconduct by deliberately introducing a fabricated shotgun examination report from Gary

4

Miller and by eliciting perjured or false testimony from Keith Johnson, Ladria Gulley, Gary Miller, and Les Labroi; (2) trial counsel violated petitioner's Sixth Amendment rights by failing to impeach witnesses who offered perjured testimony and by failing to offer expert testimony to counter the coroner's testimony about how the victim was shot; and, (3) the prosecution and the district court violated petitioner's speedy trial rights under K.S.A. § 22-3402 and the Sixth Amendment. Supplemental Pro Se Br. of Appellant, *State v. Kidd*, 265 P.3d 1165 (Kan. 2011) (No. 101809) [hereinafter Supplemental Pro Se Br. Of Appellant]. On December 2, 2011, the Kansas Supreme Court affirmed petitioner's convictions and sentence. *State v. Kidd*, 265 P.3d 1165 (Kan. 2011). The United States Supreme Court denied his petition for writ of certiorari on May 21, 2012. *Kidd v. Kansas*, 132 S. Ct. 2433 (2012).

On August 10, 2012, petitioner filed a motion for post-conviction relief under K.S.A. § 60-1507 in the District Court of Sedgwick County, Kansas. The district court denied petitioner's K.S.A. § 60-1507 motion on February 14, 2013. Petitioner appealed, raising the following claims: (1) the district court failed to make all findings of fact and conclusions of law in compliance with Rule 183(j); and (2) the district court's findings of fact and conclusions of law were contrary to the record. Br. of Appellant, *Kidd v. State*, 353 P.3d 470 (Kan. Ct. App. 2015) No. 111234 [hereinafter 60-1507 Br. of Appellant]. On July 10, 2015, the Kansas Court of Appeals affirmed the district court's denial of petitioner's 60-1507 motion. *Kidd v. State*, 353 P.3d 470, 2015 WL 4460380 (Kan. Ct. App. July 10, 2015). He then petitioned the Kansas Supreme Court for review, asserting that the Kansas Court of Appeals had decided his claims erroneously. Pet. for Review at 1, 6, *Kidd*, 353 P.3d 470. Before the Kansas Supreme Court ruled on petitioner's request for review by that court, petitioner filed his 28 U.S.C. § 2254 petition in our court on September 30, 2015. Doc. 1.

Petitioner's § 2254 petition asserts five distinct grounds for relief.  The first claim theorizes that the prosecution violated petitioner's due process rights by deliberately introducing perjured testimony from four of its witnesses.  Three of petitioner's claims theorize that his trial counsel violated his Sixth Amendment right to effective assistance of counsel by:  (1) failing to impeach four of the prosecution's witnesses on their perjured testimony; (2) failing to pursue a self-defense theory; and, (3) failing to obtain and present expert testimony to rebut how the homicide victim was shot.  Petitioner's last claim theorizes that his appellate counsel deprived his right to effective assistance of counsel by failing to argue that he was convicted by a racially biased jury.  Doc. 1.

On February 18, 2016, the Kansas Supreme Court denied petitioner's petition for review.  On April 7, 2016, this court dismissed petitioner's fifth ground for relief for failure to exhaust his available state court remedies.  Doc. 10.  The government filed its Answer and Return (Doc. 19) on August 24, 2016.  Petitioner filed his Traverse (Doc. 23) on September 12, 2016.

### III.     Exhaustion and Procedural Default

The State contends that petitioner procedurally defaulted on some of the claims he now raises.  Doc. 19.  Procedural default occurs in two ways:  (1) when a state court clearly dismisses an issue on a state procedural ground that is both independent of federal law and adequate to support the judgment; or (2) when the petitioner fails to exhaust available state remedies and would be procedurally barred from presenting the issue if it was brought in state court.  *Bowles v. Kansas*, No. 15-3049-JTM, 2016 WL 3759508, at *2 (D. Kan. July 14, 2016).  The latter is called anticipatory default, and it is the only procedural default at issue here.  *See Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002) ("'Anticipatory procedural bar' occurs

when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.").

It is well established that a state prisoner must satisfy the exhaustion prerequisite in 28 U.S.C. § 2254(b)(1) before filing a federal habeas corpus application. *Bowles*, 2016 WL 3759508, at *1. "This means that each of his federal claims must have been presented to the highest state court by way of either direct appeal or state post-conviction proceedings." *Id.*

"The exhaustion requirement . . . is grounded in principles of comity and reflects a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (internal quotation marks omitted). Like federal courts, state courts are obligated to enforce federal law. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A petitioner exhausts his claim once he "fairly present[s]" the claim to state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971). It is "not sufficient merely that the federal habeas applicant has been through state courts." *Id.* at 275–76.

For a federal court to consider a federal constitutional claim in a habeas application, the petitioner must have fairly presented the claim to the state court so that the state court will have the opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Prendergast v. Clements*, 699 F.3d 1182, 1184 (10th Cir. 2012). "A petitioner need not invoke talismanic language or cite book and verse on the federal constitution." *Id.* (internal quotation marks omitted). Instead, the "crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Id.* (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)).

If a habeas applicant fails to exhaust a claim in state court and those remedies are no longer available when the applicant files the federal habeas application, the applicant meets the

technical requirements for exhaustion because there are no state remedies available to him. *Bowles*, 2016 WL 3759508, at *1; *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). But that claim is then "subject to dismissal under the doctrine of procedural default." *Bowles*, 2016 WL 3759508, at *1; *see also Coleman*, 501 U.S. at 750. Under the procedural default doctrine, a federal court's review of the claims that were procedurally defaulted in state court is barred unless the applicant can "demonstrate either cause and prejudice for the default or that a fundamental miscarriage of justice would result if his claim is not considered." *Bowles*, 2016 WL 3759508, at *1; *see also Coleman*, 501 U.S. at 750.

## IV.  Analysis

### A.  Procedural Default

In his petition, petitioner asserts that his due process rights were violated when the prosecutor knowingly introduced perjured testimony from witnesses Ladria Gulley, Keith Johnson, Gary Miller, and Les Labroi. Petitioner raised a similar claim pro se in his appeal to the Kansas Supreme Court. *See* Supplemental Pro Se Br. of Appellant, at 7–9, 11. But, the government contends that petitioner only raised this factual issue about the testimony of Mr. Miller, Ms. Gulley, and Mr. Labroi in his appeal to the Kansas Supreme Court. *Id*. The government asserts that petitioner's claims about Mr. Johnson thus are barred by procedural default. The court disagrees.

In his Traverse, petitioner asserts that the "Keith Johnson issues were in [his] Direct Appeal" in his statement of facts on page 2. Doc. 23. Though petitioner did not explicitly argue that the prosecutor introduced perjured testimony from Mr. Johnson, the court concludes that he presented the substance of this claim to the state courts in a manner that sufficed to put the court on notice of a federal constitutional claim. On page 5 of his brief to the Kansas Court of

Appeals, petitioner describes Mr. Johnson's testimony and asserts that it was inconsistent with what Mr. Johnson told police.  Later in his brief, petitioner alleges prosecutorial misconduct more explicitly when he makes arguments based on other witnesses' testimony.  Supplemental Pro Se Br. of Appellant, at 11.  And, the Kansas Supreme Court considered all of petitioner's pro se due process claims together under its sufficiency of the evidence review when it concluded that a reasonable jury could have found petitioner guilty beyond a reasonable doubt of the crimes charged.  *State v. Kidd*, 265 P.3d 1165, 1171–72 (Kan. 2011).  Thus, the doctrine of procedural default does not bar petitioner's prosecutorial misconduct claim.

The government also contends that some of petitioner's Sixth Amendment claims for ineffective assistance of counsel are barred by the doctrine of procedural default.  Petitioner raised ineffective assistance of counsel claims in his direct appeal.  But, the Supreme Court of Kansas did not consider the issue because petitioner did not raise the issue at trial, and so the court declined to consider his claims for the first time on appeal.  *State v. Kidd*, 265 P.3d 1165, 1172–71 (Kan. 2011).  Petitioner also raised ineffective assistance of counsel claims in his K.S.A. § 60-1507 motion.  *Kidd v. State*, 2015 WL 4460380, at *1.  But, the Kansas Court of Appeals only considered his claim about his counsel's failure to impeach Ms. Gulley's testimony.  So, on appeal, the Supreme Court of Kansas only considered petitioner's claims about Ms. Gulley's testimony.

Petitioner's Sixth Amendment claims about the other witnesses' testimony are barred by the doctrine of procedural default unless petitioner can meet one of the two exceptions.  Petitioner must "demonstrate either cause and prejudice for the default or that a fundamental miscarriage of justice would result if his claim is not considered."  *Bowles*, 2016 WL 3759508, at *1; *see also Coleman*, 501 U.S. at 750.

### 1. Cause and Prejudice

Petitioner's filings demonstrate neither cause nor prejudice for the default. Petitioner does not offer any example of adequate cause excusing his failure to raise these claims in state court. "'[C]ause' under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Petitioner has not alleged any excuse or cause explaining why he failed to raise his ineffective assistance of counsel claims about failures associated with the other witnesses' testimony properly in state court. Petitioner thus has not met the cause and prejudice exception to procedural default.

### 2. Fundamental Miscarriage of Justice

Petitioner also fails to show how a fundamental miscarriage of justice would result if the court does not hear his claim. "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014). To ensure that the fundamental miscarriage of justice exception is applied rarely and only in extraordinary cases, the United States Supreme Court explicitly ties this exception to the petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 322 (1995). "To make a credible showing of actual innocence, a petitioner must support his allegations of constitutional error with new reliable evidence . . . sufficient to show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence." *Frost*, 749 F.3d at 1232 (internal quotation marks omitted).

Petitioner never asserts that he is actually innocent in his § 2254 petition or his Traverse. In his Traverse, petitioner asserts that if his trial counsel had impeached Mr. Johnson, Mr. Miller,

10

Mr. Labroi, and Ms. Gulley, his case would have had a different outcome. Doc. 23 at 1. But he does not support this allegation with any new reliable evidence to meet the demanding standard established by *Frost*. So, petitioner has shown that no fundamental miscarriage of justice will result if his claim is not considered. Thus, petitioner's ineffective assistance of counsel claims about Mr. Johnson, Mr. Miller, and Mr. Labroi's testimony are barred by procedural default.

Next, the court turns to petitioner's remaining grounds for relief in the following sections.

### B.  Ground 1:  Prosecutorial Misconduct Claims

In Ground 1, petitioner asserts that his due process rights were violated when the prosecutor deliberately introduced perjured testimony from Mr. Johnson, Mr. Miller, Mr. Labroi, and Ms. Gulley. "In cases where the state court adjudicated a prosecutorial misconduct claim on the merits," the court applies the AEDPA's deferential standard of review. *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002).

The Kansas Supreme Court characterized petitioner's prosecutorial misconduct claims as ones challenging the sufficiency of the evidence. *State v. Kidd*, 265 P.3d 1165, 1171 (Kan. 2011). But, in the court's judgment, petitioner's prosecutorial misconduct claims are better characterized as alleged *Brady* violations. *Cf. Brady v. Maryland*, 373 U.S. 83 (1963) (holding that a prosecutor's suppression of evidence favorable to the accused violates due process if the evidence is material to guilt or punishment). The Supreme Court describes one situation where the *Brady* rule applies in these terms:  when "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

For petitioner's *Brady* based claim to entitle him to relief, he must show:  (1) "the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony"; (2)

11

"the prosecution knew, or should have known, of the perjury"; and (3) "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Green v. Addison*, 500 F. App'x 712, 720 (10th Cir. 2012).

While the court views petitioner's claims differently than did the Kansas Supreme Court, the court also concludes that this dissonance did not affect the result. The Kansas Supreme Court concluded that a reasonable jury could have found petitioner guilty beyond a reasonable doubt on all charges. The court gives this decision significant deference. *See Lockett*, 711 F.3d at 1230 (noting that the AEDPA requires a federal court reviewing habeas petitions to give significant deference to state court determinations on the merits). Petitioner has not shown, and the court does not find, that the adjudication of the claim was contrary to clearly established federal law. And, petitioner has not shown, and the court does not find, that the adjudication of this claim was based on an unreasonable determination of the facts in light of the evidence presented during the state court proceedings. Petitioner's prosecutorial misconduct claims thus provide no basis for habeas relief.

### C.  Grounds 2–4: Defendant's Sixth Amendment Claims

In his remaining grounds for relief, petitioner asserts that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. In Ground 2, petitioner asserts that his trial counsel failed to impeach Ms. Gulley. In Ground 3, petitioner asserts that his trial counsel failed to pursue a self-defense theory. And, finally, in Ground 4, petitioner asserts that his trial counsel failed to secure an expert to rebut testimony about how the victim was shot. The court considers each of these claims under the standard articulated in *Strickland*.

### 1.  Ground 2:  Failure to Impeach Ladria Gulley

Petitioner contends that his Sixth Amendment rights were violated because his trial counsel failed to impeach Ms. Gulley on her allegedly perjured testimony.  The Kansas Court of Appeals determined that trial counsel effectively cross-examined Ms. Gulley and denied petitioner's claim under *Strickland*.  It held:

> A review of the record, however, indicates that [petitioner] Kidd's trial counsel thoroughly cross-examined [Ladria] Gulley.  In particular, trial counsel questioned Gulley about prior inconsistent statements she had made to the victim's mother regarding the shooting, which Kidd focused on in his K.S.A. 60-1507 motion.  As such, Kidd seems to argue that his trial counsel's performance was deficient because she did not argue this point more forcefully.  But the record reflects that the jury was clearly apprised of the fact that Gulley had previously made inconsistent statements.  Accordingly, we find no support in the record for Kidd's contention that his trial counsel ineffectively cross-examined Gulley.

*Kidd v. State*, 2015 WL 4460380, at *5.

The record supports the Kansas Court of Appeals's findings and the court concludes that this Kansas Court reasonably applied clearly established federal law.  Ground 2 thus provides no basis for habeas relief.

### 2.  Ground 3:  Failure to Eschew Self-Defense Theory

Petitioner next contends that his trial counsel was ineffective because he failed to pursue a self-defense jury instruction.  The Kansas Court of Appeals denied this claim.  *Kidd v. State*, 2015 WL 4460380, at *7.  The Court of Appeals explained that Kansas law makes self-defense available only when the defendant shows that:  (1) "[T]he defendant sincerely and honestly believed that the use of deadly force in defense of self was necessary; and (2) "an objective showing that a reasonable person in the defendant's circumstances would have perceived that the use of deadly force in defense of self was necessary."  *Id.*  The Kansas court found that the only evidence about the events leading to the shooting presented at trial was Ms. Gulley's evidence.  *Id.*  The Kansas Court of Appeals described this testimony in the following fashion:

13

> She testified that while Tynus and Kidd were playing video games, Kidd continually made "snide little remarks" to Tynus. According to Lardria, when Kidd mentioned that he wanted to kill Tynus' younger brother, Tynus got upset and demanded that Kidd leave and that she had to intervene when the two engaged in a brief physical altercation. Afterwards, Kidd ran from the house, and Tynus then ushered kids who were in the house into a backroom. After a short time, Kidd returned to the house and fired a shot through the kitchen window. Once Tynus and Ladria ran outside onto the porch to see what was going on, Ladria saw Kidd shoot Tynus in the chest before running away.

*Id.* The Kansas Court of Appeals found nothing in the record arguably suggesting petitioner was entitled to a self-defense theory at trial. The record supports these findings and also supports that that the Kansas court reasonably applied clearly established federal law. "[C]ounsel is not ineffective for failing to request a self-defense instruction where that instruction is not supported by the evidence presented at trial." *Lujan v. Norwood*, 62 F. App'x 304, 308 (10th Cir. 2003). Ground 3 thus provides no basis for habeas relief.

### 3. Ground 4: Failure to Secure Expert Testimony

Petitioner's final ground for relief asserts that his trial counsel was ineffective because he failed to hire an expert to rebut evidence about how the victim was shot. Doc. 1 at 26. To support his claim, petitioner points to Ms. Gulley's testimony about the victim being shot in the chest, but that the actual trauma was in the victim's kidney. Doc. 1 at 26. Petitioner contends that the outcome of the trial would have been different if trial counsel had offered an expert to rebut Ms. Gulley's testimony to the jury. The Kansas Court of Appeals described the facts surrounding petitioner's claim in this fashion:

> At trial, Dr. Jaime Oeberst-the Chief Medical Examiner of the Forensic Science Center in Wichita—testified that she found 14 entrance wounds "predominantly to [Tynus'] chest area" and 1 exit wound during the autopsy. She also testified that she found 13 shotgun pellets lodged in Tynus' torso, which caused injuries to his heart, pulmonary artery, lungs, trachea, and shoulder blade.
>
> When asked on cross-examination if she could discern the distance from which the shooter fired, the coroner candidly replied, "Not exactly. There are some rough estimates that forensic pathologists use, based on the inches of spread, but I

14

> can't give you an exact number." She agreed with the prosecutor, however, it was possible that Tynus was standing, turned slightly toward the shooter between 10 to 20 feet to his right, and the shooter fired a blast from either the shooter's waist or chest. Moreover, photographs of Tynus' body were admitted into evidence that showed he had been shot in the chest.
>
> Also on cross-examination, Dr. Oeberst was asked if she could tell which side Tynus was facing when he was shot, to which she responded: "[Well], he's obviously facing frontward, because that's where all the entrances are going into his body. Determining [the] position of the shooter and [the] position of the victim, they correlate to one another, you know, based on my trajectory, so I can't-you know, unless you have one of them being fixed, you can't really tell what the other one's doing."

*Kidd v. State*, 2015 WL 4460380, at *5–6. The Kansas Court of Appeals denied petitioner's ineffective assistance claims for two reasons. First, the Kansas Court of Appeals concluded that petitioner's trial counsel elicited testimony during cross examination that Dr. Oerberst did not have an opinion about the shooter's distance and, also, that the victims injuries potentially undermined the claim that the victim was shot from his right. *Id.* at *6. Second, the court concluded that petitioner had failed to demonstrate prejudice because he had not shown what opinions an expert witness might have expressed at trial that might have rebutted the expert testimony. *Id.*

The record supports the Kansas Court of Appeals's findings and the court concludes that the court reasonably applied clearly established federal law. Ground 4 thus provides no basis for habeas relief.

### D.  Evidentiary Hearing

The court finds no need to conduct an evidentiary hearing to decide petitioner's claims. *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record."); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations

or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### E. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, the movant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)). While this standard does not require a movant to demonstrate that his appeal will succeed, he must "prove something more than the absence of frivolity or the existence of mere good faith." *Miller–El v. Cockrell*, 537 U.S. 322, 338 (2003) (quotation marks omitted). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it." *Id.* at 336.

The rulings that the court has made here are not the type that reasonable jurists could debate or would conclude were wrong. The court thus declines to issue a certificate of appealability for this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Anthony Kidd's petition for writ of habeas corpus (Doc. 1) is denied.

**IT IS SO ORDERED.**

**Dated November 30, 2016, at Topeka, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**